# No. 23-1374

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

BROOKE HENDERSON, et al.,
    *Plaintiffs-Appellants*,
v.

SPRINGFIELD R-12 SCHOOL DISTRICT, et al.,
    *Defendants-Appellees*.

_____

On Appeal from the United States District Court
for the Western District of Missouri
Case No. 19-cv-00102 (Harpool, J.)

**Brief of *Amicus Curiae* Hamilton Lincoln Law Institute in Support of Plaintiffs-Appellants and Reversal**

Adam E. Schulman
John M. Andren
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
Phone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorneys for* Amicus Curiae
*Hamilton Lincoln Law Institute*

## Corporate Disclosure Statement (FRAP 26.1)

Hamilton Lincoln Law Institute ("HLLI") is a nonprofit law firm incorporated under the laws of the District of Columbia. HLLI does not issue stock and is neither owned by nor is the owner of any other corporate entity, in part or in whole. HLLI is operated by a volunteer Board of Directors.

# Table of Contents

Corporate Disclosure Statement (FRAP 26.1) ................................................................. i

Table of Contents .......................................................................................................... ii

Table of Authorities ..................................................................................................... iii

Interest of Amicus Curiae ............................................................................................. 1

Federal Rule of Appellate Procedure 29 Statement ..................................................... 2

Summary of Argument .................................................................................................. 2

Argument ....................................................................................................................... 4

I.     Whether speech is compelled does not turn on the existence of a formal policy, rule, regulation, or guideline. ........................................................ 4

Conclusion ................................................................................................................... 10

Combined Certifications of Compliance ..................................................................... 12

Certificate of Service .................................................................................................. 13

# Table of Authorities

**Cases**

*Axxon-Flynn v. Johnson*,
 356 F.3d 1277 (10th Cir. 2004) ...............................................................6

*Burns v. Martuscello,*
 890 F.3d 77 (2d Cir. 2018) ................................................................. 7-8

*Crozier For A.C. v. Westside Cmty. Dist.*,
 973 F.3d 882 (8th Cir. 2020) ...................................................................9

*Hafer v. Melo*,
 502 U.S. 21 (1991) ...................................................................................7

*Holloman v. Harland,*
 370 F.3d 1252 (11th Cir. 2004) ..................................................... 4, 6, 7

*Hutterville Hutterian Brethren, Inc v. Sveen,*
 776 F.3d 547 (8th Cir. 2015) ............................................................... 4-5

*Lakewood v. Plain Dealer Pub. Co.*,
 486 U.S. 750 (1988) ...............................................................................10

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rts. Comm'n*,
 138 S. Ct. 1719 (2018) ........................................................................ 2-3

*McClendon v. Long*,
 22 F.4th 1330 (11th Cir. 2022) ................................................................8

*Miller v. Mitchell,*
 598 F.3d 139 (3d Cir. 2010) ....................................................................7

*Minnesota Voters Alliance v. Mansky,*
 138 S. Ct. 1876 (2018) ...........................................................................10

*NAACP v. Button*,
 371 U.S. 415 (1963) ...................................................................................................1

*Oliver v. Arnold*,
 3 F.4th 152 (5th Cir. 2021) ..........................................................................................6

*OSU Student Alliance v. Ray*,
 699 F.3d 1053 (9th Cir. 2012) ................................................................................. 10

*In re Primus,*
 436 U.S. 412 (1978) ...................................................................................................1

*Speech First v. Schlissel*,
 939 F.3d 756 (6th Cir. 2019) ......................................................................................5

*Stock v. Gray,*
 2023 WL 2601218,
 2003 U.S. Dist. LEXIS 48300 (W.D. Mo. Mar. 22, 2023) ......................................1

*Telescope Media Grp. v. Lucero,*
 936 F.3d 740 (8th Cir. 2019) ......................................................................................5

*Vaughn v. Lawrenceburg Power Sys.,*
 269 F.3d 703 (6th Cir. 1998) ............................................................................3, 8-9

*Warth v. Seldin,*
 422 U.S. 490 (1974) ...................................................................................................4

*West Virginia State Bd. of Educ. v. Barnette,*
 319 U.S. 624 (1943) ..............................................................................................2, 4

*Wooley v. Maynard.,*
 430 U.S. 705 (1977) ...................................................................................................9

## Constitutional Provisions

U.S. CONST., AMEND I................................................................................................ *passim*

**Rules and Statutes**

Fed. R. App. P. 29..................................................................................................................2

Fed. R. App. P. 29(a)(4)(E)..................................................................................................2

## Interest of Amicus Curiae

Hamilton Lincoln Law Institute ("HLLI") is a public interest organization dedicated to protecting free markets, free speech, limited government, and separation of powers against regulatory abuse and rent-seeking. *See, e.g.*, *Stock v. Gray*, 2023 WL 2601218, 2023 U.S. Dist. LEXIS 48300 (W.D. Mo. Mar. 22, 2023) (preliminarily enjoining enforcement of law that restricts pharmacist speech based on viewpoint).

HLLI is particularly troubled by two aspects of the district court's decisions below. First, the district court repeatedly and erroneously relied on the lack of a formal policy, regulation, or rule as a reason for finding no compulsion of speech. JA5312, 5313, 5316-17, 5318, 5319; R. Doc. 88 at 7, 8, 11-12, 13, 14; JA5511; R. Doc. 107 at 2. Second, the district court punitively imposed more than $300,000 in attorneys' fees liability against civil rights plaintiffs, in part for the "political undertones" of their allegations. JA5512; R. Doc. 107 at 3. And, early in the litigation, the court *sua sponte* struck several paragraphs of the plaintiffs' complaint that it viewed as only "attempt[ing] to advance the political or philosophical ideologies of Plaintiffs." R. Doc. 30 at 1. Constitutional litigation, even if accurately characterized as ideological or political, is protected expressive activity. *E.g., In re Primus,* 436 U.S. 412 (1978); *NAACP v. Button*, 371 U.S. 415, 420, 429-31 (1963). Adjudicating cutting edge First Amendment claims qualifies as "important work of the federal judiciary"; it doesn't "trivialize[]" it. *Contra* JA5512; R. Doc. 107 at 3. No government official—state or federal,

1

legislative, executive, or judicial—may single out such litigation for special disfavor.

HLLI files this amicus brief in support of reversal of the district court's decisions. Counsel for the Henderson Plaintiffs have consented to the filing. Counsel for the Springfield Public Schools Defendants have not consented to the filing, and so this brief accompanies a motion for leave to file.

**Federal Rule of Appellate Procedure 29 Statement**

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), HLLI affirms that no counsel for a party authored this brief in whole or in part, no party or party's counsel contributed money intended to fund preparing or submitting the brief, and no person other than amicus, its members, or its counsel has made any monetary contributions intended to fund the preparation or submission of this brief.

**Summary of Argument**

The First Amendment chooses "individual freedom of mind in preference to officially disciplined uniformity." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943). Freedom of mind encompasses the right to speak, and the right not to speak. "States cannot put individuals to the choice of being compelled to affirm someone else's belief or being forced to speak when they would prefer to remain silent." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rts. Comm'n*, 138 S. Ct. 1719, 1745 (2018) (Thomas, J., concurring in part and in the

judgment) (simplified). "Because the government cannot compel speech, it also cannot 'require speakers to affirm in one breath that which they deny in the next.'" *Id.* (quoting *Pacific Gas & Elec. Co v. Pub. Util. Comm'n of Cal.*, 475 U. S. 1, 16 (1986)).

Plaintiffs have alleged a violation of these well-rooted principles in a relatively new context—mandatory public employee diversity training. *But see Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 718-19 (6th Cir. 1998) (hypothesizing a similar scenario). The district court found these novel claims frivolous, and punitively imposed more than $300,000 in attorneys' fees liability against plaintiffs, in part for the "political undertones" of their allegations. JA5512; R. Doc. 107 at 3.

Putting aside the impermissible penalty for engaging in politically-contentious constitutional litigation, the court's reasoning for finding the claims frivolous does not withstand scrutiny. It repeatedly relies on the fact that the plaintiffs have not shown that the defendants implemented a rule or policy compelling speech. But a rule or policy is not necessary to a compelled speech claim. Decisions from at least six circuits prove that. The constitutional injury comes from any state official compelling speech under color of law, whether that official is implementing a set policy or not.

3

# Argument

## I. Whether speech is compelled does not turn on the existence of a formal policy, rule, regulation, or guideline.

Nearly a century ago, amid perhaps this country's greatest struggle for existence, the Judiciary declared that "no official, *high or petty*, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (emphasis added). As incorporated, the First Amendment "applies to state and municipal governments, state-created entities, and *state and municipal employees*." *Holloman v. Harland*, 370 F.3d 1252, 1268 (11th Cir. 2004) (emphasis added). Yet the district court relied heavily on the fact that the plaintiffs did not allege that a formal policy, regulation, rule, or guideline compelled their speech. JA5312, 5313, 5316-17, 5318, 5319; R. Doc. 88 at 7, 8, 11-12, 13, 14; JA5511; R. Doc. 107 at 2. The court concluded that, as a result, the plaintiffs could not show a speech compulsion, or even a cognizable Article III injury-in-fact. JA5315, 5318, 5319-20; R. Doc. 88 at 10, 13, 14-15.

As a preliminary matter, the district court's analysis incorrectly conflated the plaintiffs' standing with the merits of their compelled speech claim. The standing analysis "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Hutterville Hutterian Brethren, Inc. v. Sveen*, 776 F.3d 547, 554 (8th Cir. 2015). A

4

proper standing analysis "assum[es] the merits" of the plaintiffs' claims. *Hutterville*, 776 F.3d at 554. Here, the district court not only did not assume the merits, it reasoned from its perceived failure of plaintiffs' claims to the conclusion that they lacked standing. This is wrong.

Reinterpreted as a merits decision that plaintiffs have not shown an actionable speech compulsion, the district court's decision contains a grave and recurring error. It faults plaintiffs for failing to argue that defendants "implemented policy" compelling their speech. JA5312; R. Doc. 88 at 7. It faults them for failing to argue that "Defendant SPS implemented or contemplated any policy or regulation whereby an expression about equity and anti-racism at odds with Defendant SPS would result in the speaker being labeled a white supremacist." JA5316-17; R. Doc. 88 at 11-12. It distinguishes *Telescope Media Grp. v. Lucero*, 936 F.3d 740 (8th Cir. 2019) because no evidence suggests "Defendants have implemented a law or policy." JA5313; R. Doc. 88 at 8. It likewise distinguishes *Speech First v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) because no evidence suggests "Defendant SPS has implemented any specific policy or initiative." JA5319; R. Doc. 88 at 14. Simply put, the court thought it significant that the defendants had not "enacted any policy" compelling speech. JA5317; R. Doc. 88 at 12. It returned to this notion in its fee decision, concluding that plaintiffs' claims were frivolous enough to merit adverse fee-shifting. JA5511; R. Doc. 107 at 2 ("Plaintiffs did not allege and no evidence suggested

Appellate Case: 23-1374    Page: 11    Date Filed: 05/16/2023 Entry ID: 5277537

that Defendants enacted any policy or guideline that required Plaintiffs to adhere to a certain viewpoint or articulate a particular message").

Although an official policy, law, rule, or guideline can compel speech in violation of the First Amendment, it is by no means necessary to state a valid First Amendment claim. Examples abound.

*Oliver v. Arnold* recognizes that a single in-class assignment to transcribe the Pledge of Allegiance raises a genuine issue of compelled speech. 3 F.4th 152, 161-63 (5th Cir. 2021). The *Arnold* court found it irrelevant whether the Pledge assignment stemmed from school policy—in fact, the Fifth Circuit observed the assignment contradicted the school's own Pledge approach and directly violated the principal's instruction. *Id. at* 156. Similarly, *Holloman* holds that a student subject to ad hoc disciplinary punishment for raising his fist and remaining silent during the pledge of allegiance can state a compelled speech claim—a clearly established one at that—against the teacher who "chastised him" and referred him to the principal. 370 F.3d at 1268. It sufficed that, using "verbal censure," the teacher—"an authority figure with tremendous discretionary authority"—"singled out [the student] in front of his entire class, subjecting him to embarrassment and humiliation." *Id.* at 1268-69.

Indeed, the district court explicitly considered (JA5314; R. Doc. 88 at 9) *Axson-Flynn v. Johnson*, a case that also involved compelled speech on the order of faculty. 356 F.3d 1277, 1290 (10th Cir. 2004). *Axxon-Flynn* should have tipped

off the district court that it was going astray by considering the existence *vel non* of a formal policy or regulation.

Importantly, for *individual* section 1983 liability to attach there is no need to establish that the defendant compels speech through a formal rule or policy. "[T]he plaintiff in a personal-capacity suit need not establish a connection to governmental 'policy or custom.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991). That principle applies equally to a suit bringing First Amendment compelled speech claims. An official custom or policy or the action of a final policymaker is a prerequisite for *municipal* liability, not for individual liability. *Compare Holloman*, 370 F.3d at 1268-69, *with* 370 F.3d at 1290-93 (only considering the policy for purposes of municipal liability).

Beyond the school context, the same rule applies. *Miller v. Mitchell* holds that requiring a minor to write a paper explaining "how her actions were wrong" as part of a criminal justice diversionary program exploring "what it means to be a girl in today's society" likely constitutes unconstitutionally compelled speech. 598 F.3d 139, 152 (3d Cir. 2010) (alterations omitted). As here, the *Miller* plaintiffs alleged that the speech compulsion was the content of the program itself (not a formal rule or policy), backed by the threat of expulsion from the program and attendant negative consequences. *Id.*

*Burns v. Martuscello* holds that prison guards' impromptu one-off demand (backed by threat of sanction) that a certain inmate serve as a jailhouse informant violated the inmates' First Amendment rights. 890 F.3d 77, 89-92 (2d

7

Cir. 2018). It was irrelevant that Burns was not challenging "a generally applicable policy or regulation." *Id.* at 87.

Even more recently, *McClendon v. Long* involves a county sheriff who placed "no trick-or-treat" warning signs on the property of registered sex offenders. 22 F.4th 1330 (11th Cir. 2022). Although the sheriff acted as a matter of discretion and not pursuant to any officially implemented law or policy, the Eleventh Circuit found that his action compelled the speech of the offenders whose property had been commandeered to express the sheriff's message.[1]

Finally, and most relevantly, this same rule applies in the public employee context. In *Vaughn v. Lawrenceburg Power System*, the plaintiff alleged that his supervisor had called him into his office for an extemporaneous meeting where the supervisor asked whether the plaintiff "fully agree[d]" with the employer's "anti-nepotism" policy. 269 F.3d 703, 717 (6th Cir. 1998). The plaintiff responded that he accepted the policy but did not fully agree with it; then the supervisor terminated him. *Id.* Viewing the facts in the light most favorable to plaintiff, Vaughn's compelled speech claim survived summary judgment. *Id.* at 718-19. *Vaughn* refused "to approve a rule that allows a government official to interrogate individuals about their mental adherence to government policies." *Id. at* 718. Presciently, *Vaughn* posed a hypothetical of a public school teacher

---

[1] *McClendon* also rejects the other rationalization given below that plaintiffs avoided any harm by otherwise "voic[ing] their personal objections" so that no one would "associate" them with anti-racist views. *Contrast* JA513; R. Doc. 88 at 8, *with* 22 F.4th at 1137.

opposing a school's "'diversity' policy" and later facing pressure from the school superintendent to fully embrace the policy, not merely "accept" it. *Id.* at 718-19. Imposing adverse employment consequences for such dissent presents a "constitutionally unattractive scenario." *Id.* at 719. Here, there exists a factual dispute over whether defendants' directions to plaintiffs (among them, the explicit direction to remain "professional" and "engaged" or be asked to leave the mandatory training and the announcement that white silence constitutes white supremacy) amount to a threat to impose adverse employment consequences. *Cf. Crozier For A.C. v. Westside Comty. Sch. Dist.*, 973 F.3d 882, 891 (8th Cir. 2020) ("the stress, anxiety, and ostracization arising from a teacher's false attribution of racist utterances to a middle-schooler might fit the bill" for a First Amendment retaliation claim). But, as a legal matter, *Vaughn* demonstrates that the mere fact that the compulsion originated from a government decisionmaker's direction rather than a rule or policy bears no significance.

The uniform consensus across the circuits leaves no doubt. The First Amendment's prohibition on compelled speech operates against all officials, high or petty, whether they are ministerially enforcing a law, policy, or guideline, or whether they are acting in a discretionary decision-making capacity.

A contrary rule would make little sense. A citizen's right to "individual freedom of mind"[2] is equally infringed whether she is compelled by government

---

[2] *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (quoting *Barnette*, 319 U.S. at 637).

9

officials following a formal policy or by government officials acting on their own authoritative discretion. A rule that treats those infringements differently is poor public policy. It would encourage governmental bodies to prefer unwritten, informal policies or even no policy at all. Not only would that mode of operating decrease accountability and transparency, it would lead to the exact type of unbridled, arbitrary, "opportunity for abuse" decision-making that the First Amendment abhors. *See, e.g., Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1891 (2018); *Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 757 (1988). Policies that are unwritten and unannounced "materialize[] like a bolt out of the blue to smite" disfavored speakers. *OSU Student Alliance v. Ray,* 699 F.3d 1053, 1064 (9th Cir. 2012). Ad hoc decisions even more so. And that spontaneity compounds the harm to the unwilling speaker; not only is she conscripted to carry a message that is not her own, she is deprived of the forenotice from a rule or policy that can sometimes enable her to mitigate the compulsion or avoid it altogether.

In sum, the case law is clear, consistent, and sensible: speech compulsions may arise from a codified law or policy, or alternatively, they may arise from the authoritative order of an individual state actor. The district committed an error of law when it fixated on the lack of a formal policy.

## Conclusion

This Court should reverse the decision granting summary judgment for lack of standing, and vacate the accompanying award of attorneys' fees.

Dated: May 16, 2023  Respectfully submitted,

*/s/ Adam E. Schulman*
Adam E. Schulman
John M. Andren
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
Phone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorneys for Amicus Curiae
Hamilton Lincoln Law Institute*

## Combined Certifications of Compliance

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B) because:

This brief is 2,444 words long, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point CenturyExpd BT font.

3. This brief and addendum comply with 8th Cir. R. 28A(h) because the PDF file has been scanned for viruses and is virus free.

Dated: May 16, 2023                                      Respectfully submitted,

                                                         */s/ Adam E. Schulman*
                                                         Adam E. Schulman

## Certificate of Service

I hereby certify that on May 16, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Adam E. Schulman*
Adam E. Schulman