Case No. 23-1374
(Consolidated with Case No. 23-1880)

_____

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

BROOKE HENDERSON and JENNIFER LUMLEY,

*Plaintiffs—Appellants*,

v.

SCHOOL DISTRICT OF SPRINGFIELD R12, BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF SPRINGFIELD R12, GRENITA LATHAN in her official capacity as Superintendent of Springfield Public Schools, YVANIA GARCIA-PUSATERI in her official capacity as Chief Equity and Diversity Officer of Springfield Public Schools, and LAWRENCE ANDERSON in his official capacity as Coordinator of Equity and Diversity for Springfield Public Schools,

*Defendants—Appellees*.

_____

On Appeal from the United States District Court for the
Western District of Missouri, Southern Division
Case No. 6:21-cv-03219 (Harpool, J.)

_____

## BRIEF AMICUS CURIAE OF PACIFIC LEGAL FOUNDATION IN SUPPORT OF PLAINTIFFS—APPELLANTS

_____

JOSHUA P. THOMPSON
WILSON C. FREEMAN
  Pacific Legal Foundation
  555 Capitol Mall, Suite 1290
  Sacramento, California 95814
  Telephone: (916) 419-7111
  Facsimile: (916) 419-7747
  jthompson@pacificlegal.org
  wfreeman@pacificlegal.org

*Attorneys for Amicus Curiae Pacific Legal Foundation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii
INTERESTS OF AMICUS CURIAE ..................................................................1
STATEMENT PURSUANT TO FED. R. APP. P. 29(a)(4)(E) ............................2
ISSUE PRESENTED ...........................................................................................3
ARGUMENT .......................................................................................................4
    I.   Factual Background and Summary of Argument. ...............................4
    II.  The Plaintiffs Had an "Arguable" Basis for Alleging Article III Standing. ....5
    III. The District Court's Decision Chills Novel Claims and Stunts the
         Advance of Civil Rights. ......................................................................9
CONCLUSION ..................................................................................................12
CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS..........14
CERTIFICATE OF SERVICE ..........................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abad v. Bonham*,
   562 F. Supp. 3d 1144 (E.D. Cal. 2022) ...................................................................11

*Barilla v. City of Houston*,
   13 F.4th 427 (5th Cir. 2021) ......................................................................................11

*Beach Blitz Co. v. City of Miami Beach*,
   13 F.4th 1289 (11th Cir. 2021) ....................................................................................8

*Buckler v. MacGregor*,
   634 F. App'x 694 (11th Cir. 2015) ..............................................................................7

*Christiansburg Garment Co. v. EEOC*,
   434 U.S. 412 (1978) .......................................................................................... 5−7, 9

*Clajon Production Corp. v. Petera*,
   70 F.3d 1566 (10th Cir. 1995) ....................................................................................6

*Cressman v. Thompson*,
   719 F.3d 1139 (10th Cir. 2013) ..................................................................................8

*Donaldson v. Clark*,
   819 F.2d 1551 (11th Cir. 1987) ................................................................................10

*Friedman v. Dozorc*,
   412 Mich. 1 (1981) ...................................................................................................10

*Geyer v. Millner*,
   673 F. Supp. 773 (W.D. Va. 1987) ...........................................................................10

*Henderson v. Sch. Dist. of Springfield R-12*,
   No. 6:21-CV-03219-MDH, 2023 WL 170594 (W.D. Mo. Jan. 12, 2023) ...........4

*Hughes v. Rowe*,
   449 U.S. 5 (1980) ........................................................................................................6

*Independent Federation of Flight Attendants v. Zipes*,
  491 U.S. 754 (1989)..........................................................................................10

*Khan v. Gallitano*,
  180 F.3d 829 (7th Cir. 1999) ..........................................................................6, 9

*Legal Servs. of N. Cal., Inc. v. Arnett*,
  114 F.3d 135 (9th Cir. 1997) ...............................................................................7

*Martinez v. Turner*,
  977 F.2d 421 (8th Cir. 1992) ...............................................................................6

*Neitzke v. Williams*,
  490 U.S. 319 (1989)..............................................................................................6

*Taylor AG Indus. v. Pure-Gro*,
  54 F.3d 555 (9th Cir. 1995) .................................................................................7

*Telescope Media Grp. v. Lucero*,
  936 F.3d 740 (8th Cir. 2019) ...............................................................................8

*Wooley v. Maynard*,
  430 U.S. 705 (1977)..............................................................................................8

## Other Authorities

Davis, Kelly, *Levying Attorney Fees Against Citizen Groups: Towards the Ends of Justice?*,
  39 Tex. Envtl. L.J. 39 (2008)...............................................................................9

Marcus, David, *The Public Interest Class Action*,
  104 Geo. L.J. 777 (2016) .....................................................................................9

Order Granting in Part Motion for Summary Judgment, *Barilla v. City of Houston*, No. 4:20-CV-00145 (S.D. Tex. Dec. 20, 2022)...............................11

# INTERESTS OF AMICUS CURIAE

Pacific Legal Foundation (PLF) was founded over 50 years ago and is widely recognized as the most experienced nonprofit legal foundation of its kind. PLF attorneys have participated as lead counsel or amicus curiae in several landmark Supreme Court cases defending the constitutional right (i) to equal protection under the law and (ii) to free exercise of speech. *See, e.g.*, *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1892 (2018) (declaring unconstitutional Minnesota statute banning certain clothing or items near polling places); *Keller v. State Bar of California*, 496 U.S. 1, 17 (1990) (compulsory dues collected by legal association could not be used to subsidize ideological activities)

PLF has offices in California, Florida, and Virginia and regularly litigates matters affecting the right to equal protection in courts across the nation. Here, as a nonprofit legal organization PLF has an interest in the outcome of this litigation, particularly concerning the district court's award of fees to the defendants in a Section 1983 civil rights action.

## STATEMENT PURSUANT TO FED. R. APP. P. 29(a)(4)(E)

Amicus Curiae states:

1. No party's counsel has authored this brief in whole or in part.

2. No party or party's counsel has contributed money that was intended to fund the preparation or the submission of this brief.

3. No person—other than the amicus curiae or the amicus curiae's counsel—contributed money intended to fund the preparation or the submission of this brief.

# ISSUE PRESENTED

Whether the district court erred in determining that several novel claims in Plaintiffs' First Amendment Section 1983 civil rights action were "frivolous," subsequently resulting in an unlawful award of substantial attorneys' fees and costs in favor of the defense.

# ARGUMENT

## I. Factual Background and Summary of Argument.

Plaintiffs are employees of Defendant Springfield Public Schools, a public school district in Springfield, Missouri. In October 2020, the school district required Plaintiffs' participation in what it terms a professional development training program—under the auspices of "Diversity, Equity, and Inclusion" (DEI)—which included the distribution of written handouts, videos, and group discussions. *Henderson v. Sch. Dist. of Springfield R-12*, No. 6:21-CV-03219-MDH, 2023 WL 170594, at *2 (W.D. Mo. Jan. 12, 2023). Following the training, the school district also required Plaintiff Henderson's participation in an online learning module, after which followed multiple choice questions. Plaintiffs objected to what they argue is highly controversial and forced political indoctrination.

Plaintiffs are represented by a nonprofit organization, the Southeastern Legal Foundation. Plaintiffs alleged that the training sessions violated the First Amendment in three ways: (1) Defendants discriminated against Plaintiffs' speech on the basis of viewpoint; (2) the mandatory DEI programs chilled Plaintiffs' speech; and (3) Plaintiffs were compelled to speak by affirming and associating with an ideology foisted unwillingly upon them in the mandatory DEI training.

The district court held that Plaintiffs did not suffer an injury-in-fact and thus lacked standing, dismissing the action for lack of jurisdiction. The court explained

4

in the order on the motions for summary judgment that Plaintiffs were permitted to vocally object during the DEI training sessions and had neither suffered discipline nor any other concrete adverse employment action.

The district court further held that, under these facts, Plaintiffs had a "total" lack of injury that "suggest[ed] a groundlessness that trivializes the important work of the federal judiciary" and concluded that the claims were frivolous. Then, at the court's behest, Defendants moved for attorneys' fees and costs, and the court took the unusual step of granting Defendants a significant attorneys' fee and costs well in excess of $300,000.

## II. The Plaintiffs Had an "Arguable" Basis for Alleging Article III Standing.

As the Appellants explain, in *Christiansburg Garment Co. v EEOC*, 434 U.S. 412, 421 (1978), the Supreme Court set forth a demanding standard required to grant a defendant an attorney's fee in a Title VII case. Under the *Christiansburg Garment* standard, attorneys' fees may only be awarded against a plaintiff if the court finds that the plaintiff's action is frivolous, unreasonable, or without foundation, even if not brought in subjective bad faith. The Supreme Court cautioned that in applying these criteria, a lower court must resist the temptation to engage in *post hoc* reasoning, such as concluding that because a plaintiff failed to ultimately prevail, his or her action must have been unreasonable or without foundation: "Even when the law or the facts appear questionable or unfavorable at

the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* at 422. In *Hughes v. Rowe*, 449 U.S. 5, 14 (1980), the Court extended this test to section 1983. In *Hughes* the Court reaffirmed that "[t]he plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Id.*

Under this standard, fee awards against Plaintiffs are only warranted in "rare circumstances." *Clajon Production Corp. v. Petera*, 70 F.3d 1566, 1581 (10th Cir. 1995). A claim must lack an "arguable basis" in either law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and a claim lacks an arguable legal basis only when it "is based on an indisputably meritless legal theory." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). *See also Khan v. Gallitano*, 180 F.3d 829, 837 (7th Cir. 1999) ("There is a significant difference between making a weak argument with little chance of success—what Khan did—and making a frivolous argument with no chance of success.").

Here, the district court failed to apply the "arguable basis" standard, deciding instead—in a conclusory fashion void of reasoning—that, because it determined Plaintiffs had not suffered an injury, there was a "total" lack of injury. The court also emphasized the "significant costs" Defendants expended defending the claims. At no point did the court attempt to explain why this "total" lack of injury was

6

different than the *post hoc* reasoning forbidden in *Christiansburg Garment* or try to explain how Plaintiffs' claims were not at least "arguable."

A court deciding whether a claim is frivolous must at least discuss and explain why Plaintiffs' theory is "indisputably meritless." An argument that a claim should extend to a novel situation (where not foreclosed by binding precedent) is, by definition, an "arguable" legal theory. *See Legal Servs. of N. Cal., Inc. v. Arnett*, 114 F.3d 135, 141 (9th Cir. 1997) (declining to find plaintiff's action frivolous, even where it "must have known that [its] position was unsupported by existing precedent," because it was possible that the plaintiff "was launching a good faith effort to advance a novel theory under [section] 1983 jurisprudence"); *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 563 (9th Cir. 1995) (declining to award attorneys' fees because the plaintiff's claim was not "wholly without merit," albeit that the relevant law had "been clearly established not only by the Supreme Court but seven other courts of appeal"). *See also Buckler v. MacGregor*, 634 F. App'x 694, 697 (11th Cir. 2015) ("While the plaintiffs' claim was ultimately unsuccessful, it is not clear that it was based on a legal theory that had no reasonable chance of success.") (cleaned up).

Indeed, the district court's opinion shows that Plaintiffs had at least an *arguable* basis on which to proceed with their claims. For example, as it explained, Plaintiffs' claim of injury from compelled speech relied on a case in which the court

7

struck a policy that required videographers to "speak favorably about same-sex marriage if they choose to speak favorably about opposite-sex marriage." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019). Plaintiffs also argued that their participation in the DEI training was analogous to unconstitutional state laws that had required drivers to display vehicle license plates with state mottos or images. *Wooley v. Maynard*, 430 U.S. 705, 717 (1977); *Cressman v. Thompson*, 719 F.3d 1139, 1156 (10th Cir. 2013).

The district court distinguished these cases, observing that Plaintiffs disagreed openly in the training and were not subject to adverse action (except berating from colleagues). But this is precisely the argument of Justice Rehnquist's dissent in *Wooley*. 430 U.S. at 722 ("[A]ppellees could place on their bumper a conspicuous bumper sticker explaining in no uncertain terms that they do not profess the motto … and that they violently disagree."). The district court may be correct that *Wooley* is distinguishable along these or other lines, but the fact that the court had to make such an argument, had to parse and distinguish seemingly on-point cases, and a Supreme Court justice made a similar point all demonstrate that the Plaintiffs' case is at least "arguable." More is not needed. Other circuits have recognized that this sort of support in caselaw warranting "close attention" to an argument makes a claim unlikely to be frivolous. *See, e.g.*, *Beach Blitz Co. v. City of Miami Beach*, 13 F.4th 1289, 1302 (11th Cir. 2021) (district court abused

8

discretion in granting attorneys' fees on First Amendment retaliation claim where claim had at least some support in caselaw, even where claim ultimately failed); *Gallitano*, 180 F.3d at 837 (claim not frivolous when controlling case "did involve somewhat analogous facts, but they were not identical" so that claims were not squarely foreclosed).

**III.     The District Court's Decision Chills Novel Claims and Stunts the Advance of Civil Rights.**

While it may be debatable whether Plaintiffs have standing, the nonprofit that supports the Plaintiffs and whose counsel have advanced these theories is engaged in a valuable American tradition of advancing civil rights through litigation. Public-interest litigants across the political spectrum pursue their ideological goals in court by suing the government for failure to comply with constitutional mandates or statutory requirements. *See* David Marcus, *The Public Interest Class Action*, 104 Geo. L.J. 777, 784–85 (2016) (noting public-interest litigation brought by prisoners, immigrants, and same-sex couples); Kelly Davis, *Levying Attorney Fees Against Citizen Groups: Towards the Ends of Justice?*, 39 Tex. Envtl. L.J. 39 (2008) (detailing environmental lawsuits brought and funded by nonprofit organizations). *Christiansburg Garment* itself explained that Plaintiffs in such cases were performing a public service, acting as a "private attorney general, vindicating a policy that Congress considered of the highest priority." *Christiansburg Garment*, 434 U.S. at 416. Plaintiffs undertaking a "good faith effort" to argue a novel

9

constitutional theory in the hope of extending the protection of civil rights laws in an increasingly politically frayed and fast-paced society is vital work that benefits the public on a whole and holds those in power accountable. By contrast, in public interest cases where the court rules in favor of defendants to uphold the challenged governmental action, the plaintiffs from whom defendant may seek fees had no role whatsoever in causing any potential violation of constitutional or statutory rights. *See Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989) (fee-shifting statutes "encourag[e] victims to make the *wrongdoers* pay at law").

Furthermore, impact litigation of the kind undertaken by Southeastern Legal Foundation, is essential if civil rights law is to "keep up with the times." The program at issue in this case is new and had never been reviewed by a court. Any award against a losing plaintiff in a civil rights action threatens the ability of pro bono civil litigants to deal with such novel situations. Such awards are an extreme sanction and must be limited to truly egregious cases of conduct because a more aggressive standard would risk chilling this process and grinding the advancement of civil rights and constitutional law to a halt. *See Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (en banc) ("innovative theories and vigorous advocacy ... bring about vital and positive changes in the law"); *Friedman v. Dozorc*, 412 Mich. 1, 27 (1981) (courts do not want to "unduly inhibit attorneys from bringing close cases or advancing innovative theories"). *See also Geyer v. Millner*, 673 F.

Supp. 773, 776 (W.D. Va. 1987) ("Although the plaintiff was confronted with substantial opposing authority, the legal issues he sought to advance had, arguably, some legal support. This court understands profoundly that the advancement and evolution of the law requires the presentation of novel, or indeterminate, legal theories.").

In fact, several of amicus curiae Pacific Legal Foundation's cases illustrate how important it is that Plaintiffs are not deterred from proceeding with "arguable" standing claims. For example, in *Barilla v. City of Houston*, 13 F.4th 427, 430 (5th Cir. 2021), a musician sought to challenge several Houston ordinances which made it illegal for him to busk outside the Theater District or within the District without a permit. The district court had dismissed the case for lack of standing, holding that Barilla could not show injury because he had not been cited for violating the Busking Ordinances, or even shown to be in immediate danger of arrest. *Id.* The Fifth Circuit reversed, allowing Barilla to proceed with his claims. *Id.* at 434. Significantly, after remand, Barilla prevailed on the merits of his claims, and the district court struck down the busking ordinances as unconstitutional. *See* Order Granting in Part Motion for Summary Judgment, *Barilla v. City of Houston*, No. 4:20-CV-00145 (S.D. Tex. Dec. 20, 2022). This shows that even plaintiffs with challenging standing arguments can make an important difference to the advancement of civil rights. *See also Abad v. Bonham*, 562 F. Supp. 3d 1144, 1150

11

(E.D. Cal. 2022) (plaintiffs have standing to pursue injunction against California fishing permit law notwithstanding that they were not threatened with prosecution under that law).

Finally, the district court failed to consider that public interest cases like the Plaintiffs' often involve considerable financial risk and expense on the part of the Plaintiffs already. Numerous social and financial impediments exist to nearly every public interest lawsuit, as they often involve no financial reward and considerable social, professional, and reputational risk—particularly in First Amendment cases. For example, Plaintiffs here were seeking only nominal damages, and put their jobs and reputations at risk to bring this suit, challenging a program imposed on them by their employers and popular in their industry. To add on top of these obstacles, as the district court's decision does, a lowered standard for the award of attorneys' fees could cause plaintiffs to fear they would end up bankrupt or severely strained financially. This would work against the spirit of the civil rights laws and the "American Rule" on costs and fees, and for very little public gain.

## CONCLUSION

Because Plaintiffs advanced plausible, not frivolous, theories in their attempt to obtain redress for perceived constitutional violations, this Court should reverse the decision below and hold that the district court abused its discretion by awarding attorneys' fees.

12

DATED: May 19, 2023.

        Respectfully submitted,

        /s/ Joshua P. Thompson
        JOSHUA P. THOMPSON
        WILSON C. FREEMAN
            Pacific Legal Foundation
            555 Capitol Mall, Suite 1290
            Sacramento, California 95814
            Telephone: (916) 419-7111
            Facsimile: (916) 419-7747
            jthompson@pacificlegal.org
            wfreeman@pacificlegal.org

*Attorneys for Amicus Curiae Pacific Legal Foundation*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(c) and 8th Cir. R. 32 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

> [X] this document contains 2,401 words

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

> [X] this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point,

3. Pursuant to 8th Cir. R. 28A(h)(2), this document has been scanned by Symantec Endpoint Protection and is free of all known viruses.

/s/ Joshua P. Thompson
JOSHUA P. THOMPSON

# CERTIFICATE OF SERVICE

I hereby certify that on May xx, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Joshua P. Thompson<br>
JOSHUA P. THOMPSON