Nos. 23-1374 & 23-1880

In the
# United States Court of Appeals
for the Eighth Circuit

BROOKE HENDERSON, ET AL.,
*Plaintiffs-Appellants*,

v.

SPRINGFIELD R-12 SCHOOL DISTRICT, ET AL.,
*Defendants-Appellees*.

**Appeal from the United States District Court for the Western District of Missouri
Honorable M. Douglas Harpool
(6:21-cv-03219-MDH)**

## BRIEF FOR *AMICUS CURIAE* AMERICA FIRST LEGAL FOUNDATION IN SUPPORT OF PLAINTIFF-APPELLANTS AND REVERSAL

NICHOLAS R. BARRY
   *Counsel of Record*
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE, #231
Washington, D.C. 20003
(202) 964-3721
nicholas.barry@aflegal.org

*Attorney for Amicus Curiae*

Appellate Case: 23-1374    Page: 1    Date Filed: 06/08/2023 Entry ID: 5285139

# FED. R. APP. P. 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to the Federal Rules of Appellate Procedure, *Amicus Curiae* America First Legal Foundation declares the following:

America First Legal Foundation has not issued stock to the public, has no parent company, and no subsidiary. No publicly-held company owns 10% or more of its stock, as the America First Legal Foundation is a nonprofit organization and has issued no stock.

Dated: May 19, 2023                                       Respectfully submitted,

s/ Nicholas R. Barry
Nicholas R. Barry

# TABLE OF CONTENTS

Page

*FED. R. APP. P. 26.1 CORPORATE DISCLOSURE STATEMENT........i*
*TABLE OF CONTENTS ................................................................... ii*
*TABLE OF AUTHORITIES.............................................................iii*
*INTEREST OF AMICUS CURIAE ..................................................... 1*
*INTRODUCTION AND SUMMARY OF ARGUMENT .......................... 2*
*ARGUMENT ................................................................................. 3*
*CONCLUSION .............................................................................. 7*
*CERTIFICATE OF COMPLIANCE..................................................... 8*
*CERTIFICATE OF SERVICE ............................................................ 9*

# TABLE OF AUTHORITIES

**CASES**

*Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*,
    434 U.S. 412 (1978) ............................................................................... 3

*Hughes v. Rowe*,
    449 U.S. 5 (1980) ................................................................................... 3

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
    138 S. Ct. 2448 (2018) ........................................................................... 5

*Keene Corp. v. Cass*,
    908 F.2d 293 (8th Cir. 1990) ................................................................. 3

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
    487 U.S. 781 (1988) ............................................................................... 5

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2370
    (2018) ..................................................................................................... 4

**FEDERAL STATUTES**

42 U.S.C.
§ 1983 ............................................................................................................ 1

**FEDERAL RULES**

Federal Rules of Appellate Procedure
    Rule 26.1 ................................................................................................. i

**OTHER AUTHORITIES**

Habi Zhang, "American Maoism", The Claremont Institute ................... 2

# INTEREST OF AMICUS CURIAE[1]

America First Legal Foundation ("America First Legal") is a public interest law firm dedicated to vindicating Americans' constitutional and common-law rights, protecting their civil liberties, and advancing the rule of law. America First Legal regularly represents individuals and entities in federal and state courts across the United States. As a public interest law firm that brings civil rights-related cases, including those under 42 U.S.C. § 1983, America First Legal has significant interests in the outcome of this case.

Civil rights litigation and cases involving compelled speech and the First Amendment or political disputes are contentious areas of litigation. But civil rights laws play a fundamental role in our justice system. While claims may not always prevail, the right to be heard in and of itself is significant.

In this case, the district court wrongly imposed fees that amount to sanctions against the Plaintiffs-Appellants—two educators and their lawyers—who merely sought to be heard on a genuine civil rights claim.

---

[1] This brief was not written in whole or in part by counsel for any party, and no person or entity other than the amicus has made a monetary contribution to the preparation and submission of this brief.

1

In this case, the district court abused its discretion by imposing costs that amount to significant sanctions—chilling the willingness of future plaintiffs to seek to vindicate their rights in the federal courts and of future lawyers to represent them.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Two teachers were subjected to mandatory "diversity training" by the Appellee. They were told they were racist because they are white, told that they could not disagree during the training, and told that they are immorally privileged because of their skin color. In the style of a Maoist struggle session, they were forced to agree with statements they disputed and threatened with punishment, including reduced pay, if they did not satisfactorily complete the training.[2] Accordingly, the teachers sued, alleging claims for relief based on compelled speech, content and viewpoint discrimination, and unconstitutional condition of employment.

The district court dismissed their case for a lack of standing. Then, it issued an unprecedented and punitive order imposing financially crippling fees. This order is manifestly improper and should be

---

[2] Habi Zhang, "American Maoism", The Claremont Institute (Aug. 15, 2021), https://bit.ly/3MciBGg.

2

overturned. Furthermore, it will have a chilling effect on parents, teachers, and citizens across the country who desperately need a lawyer to vindicate their rights, but who will find themselves unable to obtain representation. Coercive "anti-racist trainings" raise a host of constitutional concerns, especially where, as here, the ideological indoctrination bears the government's imprimatur. But the district court's order will force any attorney thinking of helping a client stand up against coercive and oppressive mandatory "diversity" training to refrain from zealous advocacy or to decline potentially meritorious cases entirely.

## ARGUMENT

The district court lacked jurisdiction to grant fees, and the Appellants' claims were not frivolous, unreasonable, or groundless. First, a district court cannot award fees when it finds it lacks subject matter jurisdiction, as it did here. *Keene Corp. v. Cass*, 908 F.2d 293, 298 (8th Cir. 1990). Second, a district court may exercise its discretionary power to award attorneys' fees to a prevailing defendant only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (section 1988); *Christiansburg Garment Co.*

3

*v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421 (1978) (Title VII).

The record evidence here is too strong to reach such a conclusion. The teachers made allegations and submitted evidence showing that they were required to attend training and that failure to complete the training would reduce their pay. App. 5, 14; R. Doc. 1 at ¶¶ 20, 76. Further, the mandatory training required them to make statements and assent to claims about racism and privilege that they disputed. App. 14, 16; R. Doc 1 at ¶¶ 80, 87. The teachers alleged that the training was teaching that only white people could be racist. App. 17; R. Doc 1 at ¶ 90. One teacher (Jennings) objected and was berated and afterwards, she self-censored for fear that the training facilitators would ask her to leave and she would be punished by her employer. App. 17; R. Doc. 1 at ¶ 94. Other allegations, *which were admitted*, demonstrate that the other teacher (Brooke) was required to answer questions related to racism in a specific way that she disagreed with. App. 19; R. Doc 1 at ¶¶ 114-115; App. 50; R. Doc. 17 at ¶¶ 114-115.

Professional speech is not subject to a lower level of scrutiny. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2370 (2018), and the First Amendment guarantees a person the freedom to decide both

4

what to say and what not to say. *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 797 (1988). Compelling individuals to mouth support for views they find objectionable, including the "fact" that only white people can be racist, should be "universally condemned," *see Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018).

Even if ultimately deficient, the factual allegations in the complaint *as it stands* should be more than sufficient to meet the "frivolous, unreasonable, or without foundation" test. Each one of the above allegations arguably states a valid compelled speech claim against the government. As a whole, the facts certainly refute the district court's punitive findings.

Furthermore, the court below took the extraordinary step of striking four paragraphs of the teachers' complaint on its own motion, explaining that these paragraphs were only to "argue or attempt to advance the political or philosophical ideologies." R. Doc. 30 at 1. It claimed that "Plaintiffs appear to use these paragraphs only to imply that SPS's views on racism, racial discrimination, and related issues are incorrect and that Plaintiffs' own differing views are correct." R. Doc. 30

5

at 2. But the gravamen of any compelled speech claim against the government, and the reason why what the government did here is so pernicious and worthy of condemnation, is that the authorities forced the teachers *to say things that they did not believe.*

The court held that "Encouragement to follow general principles of equity and anti-racism, absent some incentive or disincentive to actually express a specific message, altogether fails to bestow injury-in-fact required for compelled speech." App. 5315; R. Doc. 88 at 10. But when viewed through the lens of the struck paragraphs, this sentence could read: "Encouragement to follow general principles to treat people differently based on skin color and race essentialism, absent some incentive, or disincentive to actually express a specific message, altogether fails to bestow injury-in-fact required for compelled speech." Read this way, it is unlikely the district court would make the same finding.

Finally, it is indeed telling that the government never argued that teachers' claims were frivolous in the summary judgment briefing. Instead, the district court suggested this to it, both inviting a fee motion and laying out the argument that should be made. App. 5329-30; R. Doc.

6

88 at 24-25.

"Anti-racism" training, by the government or other employers, raises a host of complicated and highly charged legal issues. The underlying premise of all American civil rights laws is color blindness. But the government's training here was explicitly designed to refute and discredit this premise, in part by using coercive power to silence dissent.

The district court's fee award punished the teachers and their counsel for objecting to the shibboleths embedded in the government's "anti-racist" training. Speaking up against such things, however, is protected by the Constitution. Even assuming the teachers' allegations were insufficient to establish standing, there is simply no basis in the record for finding that the teachers and their counsel advanced claims that were frivolous, unreasonable, or without foundation.

## CONCLUSION

Amicus respectfully requests that the Court find that the district court abused its discretion.

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this motion complies with the typeface and formatting requirements of Fed. R. App. P. 29 and 32, and that it contains 1,337 words as determined by the word-count feature of Microsoft Word. The brief has been scanned for viruses and is virus free.

s/ Nicholas R. Barry

## CERTIFICATE OF SERVICE

I hereby certify that, on May 19, 2023, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

s/ Nicholas R. Barry