Nos. 23-1374 & No. 23-1880

# In the United States Court of Appeals for the Eighth Circuit

BROOKE HENDERSON, et al.,
*Plaintiffs-Appellants*,

v.

SCHOOL DISTRICT OF SPRINGFIELD R-12, et al.,
*Defendants-Appellees*,

**On Appeal from the United States District Court
for the Western District of Missouri,
No. 6:21-cv-03219 (Harpool, J.)**
_____

**AMICUS BRIEF OF PARENTS DEFENDING EDUCATION
IN SUPPORT OF APPELLANTS AND REVERSAL**
_____

> J. MICHAEL CONNOLLY
> CAMERON T. NORRIS
> JAMES F. HASSON
> CONSOVOY MCCARTHY PLLC
> 1600 Wilson Boulevard, Suite 700
> Arlington, VA 22201
> (703) 243-9423
> mike@consovoymccarthy.com
> cam@consovoymccarthy.com
> james@consovoymccarthy.com
> *Counsel for Parents Defending Education*

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* Parents Defending Education hereby certifies that it has no parent company and no publicly held corporation owns 10% or more of its stock.

## TABLE OF CONTENTS

Rule 26.1 Corporate Disclosure Statement ............................................................................i

Table of Authorities ..............................................................................................................ii

Interest of *Amicus Curiae* ....................................................................................................1

Summary of Argument .........................................................................................................1

Argument ..............................................................................................................................3

I. The District's mandatory training policy unconstitutionally compels speech ..............3

II. Under *Monell*, a written document is not necessary to show the existence of a government policy .......................................................................................................7

III. The district court's fee award was an abuse of discretion that will chill plaintiffs from filing meritorious claims .....................................................................................8

Conclusion ..........................................................................................................................10

Certificate of Compliance ...................................................................................................12

Virus Check Certification ...................................................................................................12

Certificate of Service ..........................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*281 Care Comm. v. Arneson*,
 638 F.3d 621 (8th Cir. 2011) ................................................................... 7

*Atkinson v. City of Mountain View, Mo.*,
 709 F.3d 1201 (8th Cir. 2013) ............................................................ 2, 7

*Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*,
 434 U.S. 412 (1978) ................................................................................ 9

*Constantine v. Rectors & Visitors of George Mason Univ.*,
 411 F.3d 474 (4th Cir. 2005) ................................................................. 6

*Dillon v. Brown County, Neb.*,
 380 F.3d 360 (8th Cir. 2004) ................................................................. 8

*Evergreen Ass'n, Inc. v. City of New York*,
 740 F.3d 233 (2d Cir. 2014) .................................................................. 5

*Hughes v. Rowe*,
 449 U.S. 5 (1980) (per curiam) ............................................................. 9

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
 515 U.S. 557 (1995) ............................................................................ 4, 6

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
 138 S. Ct. 2448 (2018) ............................................................................ 1

*Lamboy-Ortiz v. Ortiz-Velez*,
 630 F.3d 228 (1st Cir. 2010) .................................................................. 8

*Lee v. Weisman*,
 505 U.S. 577 (1992) ................................................................................ 5

*Marquart v. Lodge 837, Int'l Ass'n of Machinists*,
 26 F.3d 842 (8th Cir. 1994) ................................................................... 8

*Monell v. Dep't of Soc. Servs.*,
 436 U.S. 658 (1978) ..................................................................................................7

*Planned Parenthood of Minnesota, Inc. v. Citizens for Cmty. Action*,
 558 F.2d 861 (8th Cir. 1977) ............................................................................. 8, 10

*Sorrell v. IMS Health Inc.*,
 131 S. Ct. 2653 (2011) ..............................................................................................4

*Speech First, Inc. v. Cartwright*,
 32 F.4th 1110 (11th Cir. 2022) .................................................................................7

*Speech First, Inc. v. Fenves*,
 979 F.3d 319 (5th Cir. 2020) ....................................................................................2

*Speech First, Inc. v. Schlissel*,
 939 F.3d 756 (6th Cir. 2019) ....................................................................................7

*Stuart v. Camnitz*,
 774 F.3d 238 (4th Cir. 2014) ....................................................................................4

*Telescope Media Grp. v. Lucero*,
 936 F.3d 740 (8th Cir. 2019) ....................................................................................4

*Williams v. City of Carl Junction, Mo.*,
 523 F.3d 841 (8th Cir. 2008) ............................................................................... 8, 9

*Wooley v. Maynard*,
 430 U.S. 705 (1977) ..................................................................................................6

*Wragg v. Village of Thornton*,
 604 F.3d 464 (7th Cir. 2010) ....................................................................................7

**Statutes**

42 U.S.C. § 1983 ...............................................................................................................7

42 U.S.C. § 1988 ...............................................................................................................8

# INTEREST OF *AMICUS CURIAE*[1]

Parents Defending Education ("PDE") is a nationwide, grassroots membership organization consisting largely of parents of school-aged children. PDE's mission is to prevent the politicization of K-12 education, including government attempts to limit personal and professional developmental opportunities for female students in service to radical ideologies. PDE furthers this mission through network and coalition building, disclosure of harmful school policies, advocacy, and, if necessary, litigation.

This case directly implicates PDE's mission, and its outcome will have real-world consequences for PDE's members. While the First Amendment rights of teachers differ from those of students—*i.e.*, the children of PDE's members—the district court's legal errors affect the free speech rights of both. If the district court's decision is upheld, then K-12 students throughout the Eighth Circuit can be forced to "mouth support" for school officials' preferred views. *Cf. Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018). PDE's mission is to prevent such outcomes.

# SUMMARY OF ARGUMENT

American citizens have "the right to speak freely" or to "refrain from speaking at all." *Id.* Government policies that compel them to do otherwise—or punish them for refusing to comply—violate the First Amendment. *Id.* Schools cannot dodge this

---

[1] This brief was not authored in whole or in part by counsel for a party. No person other than the amicus made a monetary contribution intended to fund the preparation or submission of this brief. PDE requested consent to file this brief from all parties. Appellees indicated that they oppose.

1

Constitutional minimum by declining to formalize their edicts in writing. And individuals shouldn't be subjected to crippling attorneys' fees because they sought to exercise their First Amendment rights.

The district court held that Plaintiffs lacked standing because they had not demonstrated an injury-in-fact to their First Amendment rights. According to the district court, Plaintiffs failed to demonstrate any sort of cognizable injury because mandatory training sessions did not literally force them to speak under threat of discipline and because the Plaintiffs briefly expressed their views at the beginning of the training sessions before District officials stepped in. That is incorrect. Government policies can chill speech—or compel speech—even if they do not directly prohibit anything. *See, e.g.*, *Speech First, Inc. v. Fenves*, 979 F.3d 319, 336-38 (5th Cir. 2020).

As a fallback, the district court concluded that Plaintiffs were not entitled to relief under Section 1983 because the trainings were not conducted pursuant to a District policy. The district court's main justification appeared to be that the District did not have a formal document referring to its training requirements as a "policy." But the Supreme Court has repeatedly held that written documents are not the *sine qua non* of governmental policies. The existence of a policy can be established in many other ways, including through widespread practice or by the actions of a person who wields final decisionmaking authority. *See, e.g.*, *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). That is the case here: the District conducted multiple training sessions, informed Plaintiffs that they were "required" to attend them, App.5339-40, R.

Doc. 88, at 14-15, and has acknowledged that it will continue to do so in the future, *see* Henderson-Br. 45 n.5.

The district court's most egregious holding, however, was its decision to impose more than $300,000 in attorneys' fees on two public school teachers who sought to vindicate their First Amendment rights. The district court's only justification for doing so was its conclusion that—based on its own flawed constitutional interpretation—the plaintiffs' arguments were "frivolous." App.5512-13, R. Doc 107, at 3-4. The district court never explained *why* it found those arguments frivolous, other than the fact that it disagreed with them as a matter of law. If that is the proper standard for fee shifting, then few individuals would ever risk filing suit to defend their civil rights. Put differently, the district court's approach turns the cost-shifting incentive in civil-rights cases on its head. Moreover, it is inconsistent with Eighth Circuit precedent and the decisions of the Supreme Court.

The district court's decision on the merits and its order awarding attorneys' fees should be reversed.

## ARGUMENT

### I. The District's mandatory training policy unconstitutionally compels speech.

Springfield Public Schools (the "District") does not deny that the Plaintiffs were "required" to attend training sessions, or that they had to choose certain answers on a mandatory multiple-choice questionnaire "to receive credit" for attending the training,

3

"even though those answers were at odds with [their] personal opinions." App.5312, R. Doc. 88, at 7. It likewise does not deny that Plaintiffs were told that they "must commit to" the District's positions on racial issues and that they would be "complicit in white supremacy if they remined [sic] silent." App.5312, R. Doc. 88, at 7. Instead, the District argues—and the district court agreed—that Plaintiffs could not establish Article III injury because the training did not "require[] Plaintiffs to actually express a particular viewpoint." App.5314, R. Doc. 88, at 9.

As demonstrated by the concessions listed above, the District's assertion is factually incorrect. More importantly, it misunderstands First Amendment caselaw. Even if the District believes "that the words [it] puts into [a student or teacher's] mouth are factual, that does not divorce the speech from its moral or ideological implications." *Stuart v. Camnitz*, 774 F.3d 238, 246 (4th Cir. 2014); *see also Hurley,* 515 U.S. at 573 ("[A]n individual's 'right to tailor his speech' or to not speak at all 'applies ... equally to statements of fact the speaker would rather avoid.'"); *Sorrell v. IMS Health Inc.,* 131 S. Ct. 2653, 2667 (2011). The District simply cannot "coerce [employees] into betraying their convictions and promoting ideas they find objectionable." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 753 (8th Cir. 2019) (cleaned up).

Compelled speech is especially unpalatable where, as here, the "speaker [is] intimately connected with the communication advanced." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 576 (1995). In such circumstances, the government action not only harms the speaker, but it "directly affect[s]" the public as

4

well because "[l]isteners may have difficulty discerning that the message is the state's, not the speaker's." *Camnitz*, 774 F.3d at 246. Simply put, compelled speech strangles the free exchange of ideas that the First Amendment was designed to promote.

"When evaluating compelled speech, [courts] consider the context in which the speech is made." *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 249 (2d Cir. 2014). "[S]ubtle coercive pressure" by government officials may violate the First Amendment to the same extent as a formal mandate. *Lee v. Weisman,* 505 U.S. 577, 591 (1992); *cf* Henderson-Br. 19 ("'[The District] admitted that it endorsed certain viewpoints and reacted differently based on the responses it received during the training." (citing App.2756 at 202:8-208:2, R. Doc. 79-1, at 51-52)).

Here, the District openly instructed its employees—in writing—that it considered "white silence" to be a form of "white supremacy." App.1789, R. Doc. 77-13, at 22. Thus, if Plaintiffs wished to avoid being labeled "white supremacists," then they needed to actively participate in the District's mandatory racial "equity" programs. Just minutes later, however, District employees warned Plaintiffs "that denying [their] privilege[d]" status as white Americans or disagreeing that they had "access to opportunities while denying [those opportunities] to so many others," was "also a form of white supremacy." App.1327, R. Doc. 77-2, at 6; App.1693, R. Doc. 77-8, at 52. Taken together, those two statements necessarily communicated to Plaintiffs that there was only one acceptable outcome to the District: they needed to speak, and they needed to express the "correct" opinions when they did.

5

Nevertheless, the district court held that the policy did not violate Plaintiffs' First Amendment rights, for two equally incorrect reasons. First, the district court held that the Plaintiffs did not show that the "policy requir[ed] Plaintiffs to actually express any viewpoint at odds with their personal opinions" or that the District "threatened punishment should Plaintiffs fail to actually express viewpoints at odds with their personal opinions." App.5312, R. Doc. 88, at 7. But it is well established that the compelled speech doctrine is not limited to laws or policies that literally require a person to speak upon threat of punishment. *E.g.*, *Wooley v. Maynard,* 430 U.S. 705, 715 (1977); *Hurley*, 515 U.S. at 572-73. The government "is not free to interfere with speech for no better reason than promoting an approved message or discouraging a favored one, however enlightened either purpose may strike the government." *Hurley*, 515 U.S. at 579. By concluding otherwise, the district court committed reversible error.

Second, the district court held that Plaintiffs were not chilled from speaking because they initially "expressed their personal views during the training." App.5313, R. Doc. 88, at 8. As courts have recognized, however, the government can chill speech without "freez[ing] it completely." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). The relevant question is whether a policy would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* That is evidently the case here. *Cf.* App.5313, R. Doc. 88, at 8 ("Plaintiffs did not express any more of their own views during the training" after being told that their beliefs were unacceptable.).

By holding that Plaintiffs' previous (albeit brief) expressions of their beliefs foreclosed any First Amendment claim, the district court ignored numerous decisions from this Court and others emphasizing that the relevant inquiry in the First Amendment context is whether a government official wields apparent authority in a coercive manner. *See, e.g.*, *281 Care Comm. v. Arneson*, 638 F.3d 621, 628-29 (8th Cir. 2011); *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1123 (11th Cir. 2022); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 764 (6th Cir. 2019). That, too, was reversible error.

## II. Under *Monell*, a written document is not necessary to show the existence of a government policy.

Local government bodies, like the District, are "persons" for the purposes of 42 U.S.C. § 1983 and therefore may be sued under Section 1983 for violations of constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy'; (2) an unofficial 'custom'; or (3) a deliberately indifferent failure to train or supervise." *Atkinson*, 709 F.3d at 1214 (cleaned up). In the absence of an express, written policy, plaintiffs can satisfy either of the first two requirements by showing that their injuries were caused by "a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law" or by the actions of "a person with final policymaking authority." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010); *see also Atkinson*, 709 F.3d at 1207 (requiring only a "municipal policy of some nature").

The district court never analyzed whether the training—which the District told Plaintiffs was "mandatory" and would be "resume[d] in the future, Henderson-Br. 45-46 & n.5—satisfied the "widespread practice" or "final policymaking authority" tests. In fact, it did not even acknowledge the existence of those tests. Rather, it appeared to base its decision solely on the absence of a formal document labeling the required training exercises as a "policy." *See, e.g.*, App.5328-30, R. Doc. 88, at 23-25; *but see* App.5329, R. Doc. 88, at 24 ("[N]o evidence suggests Defendants expected employees to personally believe or appreciate *the policy*, approach, or underlying principles." (emphasis added)). That, too, is reversible error.

### III. The district court's fee award was an abuse of discretion that will chill plaintiffs from filing meritorious claims.

A district court's award of attorneys' fees to a prevailing party in civil rights litigation is reviewed for abuse of discretion. *See Dillon v. Brown County, Neb.,* 380 F.3d 360, 365 (8th Cir. 2004). The "standard for awarding attorney's fees to prevailing defendants in a civil rights suit is difficult to meet, and rightly so. Congress granted parties the prospect of a reasonable attorney's fee under 42 U.S.C. § 1988 to encourage the prosecution of legitimate civil rights claims; to award fees to prevailing defendants when the history of a case does not justify it undercuts that goal and chills civil rights litigation." *Lamboy-Ortiz v. Ortiz-Velez,* 630 F.3d 228, 236 (1st Cir. 2010).

This court has long held that it "will not allow a threat of paying" a defendant's legal fees "to chill the assertion … of seemingly meritorious civil rights claims." *Planned*

8

*Parenthood of Minnesota, Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 871 (8th Cir. 1977). Thus, "[a] prevailing defendant" is "'entitled to attorney's fees only in very narrow circumstances.'" *Williams v. City of Carl Junction, Mo.*, 523 F.3d 841, 843 (8th Cir. 2008) (cleaned up) (quoting *Marquart v. Lodge 837, Int'l Ass'n of Machinists,* 26 F.3d 842, 848 (8th Cir. 1994)). Merely failing to prevail on the merits—whether at the summary judgment stage or any other—is not one of those circumstances. *See id.* (cleaned up) ("Even allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation.'"). To the contrary, "so long as the plaintiff has 'some basis' for [his] claim, a prevailing defendant may not recover attorneys' fees." *Id.*

In short, "a plaintiff should not be assessed his opponent's attorney's fees" unless the district court "finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe,* 449 U.S. 5, 15 (1980) (per curiam) (cleaned up). The district court invoked this standard in passing, but it provided no reasoned explanation for its conclusion that the standard applied to Plaintiffs' claims. Instead, the district court merely recounted its merits analysis. *See, e.g.*, App.5512, R. Doc. 107, at 3 ("As this Court noted in its summary judgment order …."). That is precisely what this Court and the Supreme Court have held that district courts must not do. *See Williams*, 523 F.3d at 843 ("[W]e are mindful of the Supreme Court's admonition to avoid 'post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable

9

or without foundation.'" (quoting *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978))).

Moreover, the fee order, if upheld, will inevitably deter future plaintiffs from filing meritorious civil rights claims. Few individuals will choose to risk crippling sanctions if their claims are ultimately unsuccessful. That is especially the case when, as here, the plaintiffs are civil servants who could be forced to pay several times their annual salary if a district court happens to disagree with the merits of their case. For good reason, this Court has cautioned against such outcomes. *See, e.g.*, *Planned Parenthood of Minnesota,* 558 F.2d at 871.

Because the district court's fee order violated binding precedent and will have broader ramifications if left in place, the order was an abuse of discretion and must be reversed.

## CONCLUSION

This Court should reverse the district court's order granting summary judgment to the Defendants and reverse the fee award.

Dated: June 9, 2023                    Respectfully Submitted,

/s/ *James F. Hasson*

J. MICHAEL CONNOLLY
CAMERON T. NORRIS
JAMES F. HASSON
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
(703) 243-9423
mike@consovoymccarthy.com
cam@consovoymccarthy.com
james@consovoymccarthy.com

*Counsel for Parents Defending Education*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) because it contains 2,550 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: June 9, 2023  /s/ *James F. Hasson*

## VIRUS CHECK CERTIFICATION

The electronic version of this brief has been scanned and in virus-free.

Dated: June 9, 2023  /s/ *James F. Hasson*

## CERTIFICATE OF SERVICE

I filed this brief with the Court via ECF, which will email everyone requiring notice.

Dated: June 9, 2023  /s/ *James F. Hasson*